Mark F. Fleming
Law Office of Mark F. Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 300-6202
mfflaw@cox.net

Attorney for Defendant PEDRO LOPEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO LOPEZ, et al.,<br><br>Defendants. | Case No. CR-09 00466-DSF-13<br><br>**DEFENDANT PEDRO LOPEZ'S REPLY TO THE GOVERNMENT'S OBJECTION TO HIS MOTION TO SUPPRESS PHOTOSPREAD IDENTIFICATIONS AND REQUEST FOR HEARING**<br><br>Hearing Date:  January 16, 2013<br>Time:          2:30 p.m.<br>Courtroom:     Hon. Dale S. Fischer |

**TO: UNITED STATES ATTORNEY ANDRE BIROTTÉ JR. AND ASSISTANT UNITED STATES ATTORNEYS GARTH HIRE, JOANNA CURTIS, ROBYN BACON AND KEVIN ROSENBERG:**

**PLEASE TAKE NOTICE** that the accused, Pedro Lopez files this reply to the government's objection to his motion to suppress impermissibly suggestive identifications. That motion is scheduled to be heard on January 16, 2013 at 2:30 p.m.

1

I.

*Summary of the Government's Opposition*

The government's brief in opposition to Mr. Lopez's motion to suppress witness identifications "GB" can be summarized as follows: The legality of the law enforcement tactics employed in securing positive identifications of Mr. Lopez by witnesses Lemar Edwards (a witness to the Guajardo killing) and Arturo Larios (the witness to the alleged plot to kill Detective Flores) are moot since neither witness will be called in the government's case-in-chief. And the identification by witness Dylan Balderas (second witness to the Guajardo killing) was the result of proper identification procedures and regardless, Mr. Balderas' identification of Mr. Lopez was reliable under the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972). *See* GB Doc 1235 filed 12/10/12.

II.

*Summary of Mr. Lopez's Reply*

But Mr. Lopez plans to call both Mr. Edwards and Mr. Larios as defense witnesses at trial. The government has refused to stipulate that it will not attempt to elicit any in court or out-of-court identifications from these witnesses during cross examination.[1] Unless the government is prepared to stipulate, the issue of whether it can elicit such evidence whether on direct or cross-examination is ripe.

As for Mr. Balderas, the government offers no serious argument that the photo array shown to him was not impermissibly suggestive. The array itself provides the best evidence of suggestiveness. *See* Exhibit B to Lopez's motion to suppress, Doc 1195. And the government's claim that Mr. Balderas' identification is reliable based on his prior contacts with Mr. Lopez and his opportunity to view Lopez is nothing more than wishful thinking. Mr. Balderas is a convicted felony who lied about what

---

[1] When asked by undersigned counsel whether it intends to elicit identifications of Mr. Lopez through witnesses Edwards or Larios on cross-examination, the government replied on 12/20/12 that it will not use the evidence in its case-in-chief, and that Mr. Lopez should request an *in limine* ruling from the Court on whether the evidence may be used for impeachment. But the parties have now briefed the issue in preparation for the upcoming hearing. It makes little sense to submit another round of briefs and request another hearing date simply to delay for a few months what can easily be accomplished on January 16.

2

he saw the night of the Guajardo killing.

Mr. Balderas was shown the tainted photo array by Detective Flores. Detective Flores also showed witness Larios an array which included a photo of Mr. Lopez. Detective Flores is captured on video helpfully directing Larios to pick someone else when Larios failed to initially select Mr. Lopez. Detective Flores' actions, which the government does not dispute in its response, raise legitimate concerns about his interaction with Mr. Balderas as well.

Even more troubling is the conduct of Detective Pellitier, who assisted Detective Flores with Balderas. Detective Pellitier showed witness Edwards the same array shown to Balderas. Edwards claims that Detective Pellitier provided him a copy of Mr. Lopez's picture prior to showing him the full array, and told him that Lopez was the shooter. Pellitier then pressured Edwards to identify Lopez as the shooter.[2] The defense has subpoenaed materials from a 1999 murder case in which we suspect that Detective Pellitier engaged in similar misconduct with a witness.[3]

### III.

*The Photo Array Shown to Witnesses Balderas and Edwards Was Impermissibly Suggestive Since Mr. Lopez's Picture Was The Only One Of A Different Size, The Only One With A Distinctive Blue Background, And He Was The Only Person Wearing A Bright Red Shirt. The Government's Reliance On Factually Dissimilar Cases Decided Under The Abuse Of Discretion Standard Is Unpersuasive.*

The government essentially argues that the photo array, if reviewed by the Ninth Circuit, might be able to withstand scrutiny under the heighten abuse of discretion standard used there. GB 5 - 10. The government would understandable prefer that this

---

[2] *See* Exhibit A: Declaration of Lemar Edwards signed December 6, 2012.

[3] The subpoenaed documents are from *People v. Roberto Edgardo Alvarez*, BA196361. The defense investigation has led to a good faith belief that a woman named Patricia Andrade, who witnessed a shooting, may have been improperly shown the suspect's picture by Detective Pellitier prior to being shown the six-pack array. The date of the subpoena is for January 16 and the defense will supplement this motion with any relevant evidence received as a result. The defense hereby requests that the government conduct its own review of Detective Pellitier's prior history of alleged misconduct, including any allegations made to the Los Angeles District Attorneys Office, the LAPD and or the City Attorneys Office of LA.

1 Court utilize the appellate court's standard for setting aside a conviction based on a
2 defective photo array, but that is the wrong standard.

3 We are not in the appellate court, we are in the district court, and the question is
4 whether this photo array, in the sound discretion of the trial judge, impermissibly
5 emphasizes the focus on Mr. Lopez. *United States v. Montgomery*, 150 F.3d 983, 992 (9th
6 Cir. 1998). It does.[4] The photo array almost comically emphasizes the focus on Mr.
7 Lopez. His is the only photo of a significantly different size (8% smaller) than the rest;
8 his photograph alone is set against a bright blue background while the other five share
9 the same drab greyish background; and only Mr. Lopez is featured in a colorful red shirt
10 which the other subjects are wearing neutral white (3 subjects) or black (2 subjects)
11 shirts. Defense expert Dr. Robert Shomer will testify at the upcoming hearing that not
12 only is the photo array unduly suggestive, it is among the most flawed arrays he has ever
13 examined in his nearly 40 years of providing expert opinions on the subject.

14 And the cases cited by the government are easily distinguishable from the facts
15 here. *See* GB 8 - 10. In *Mitchell*, for example, the Ninth Circuit found that since *all* of
16 the backgrounds were different colors, *none of them* stood out. *Mitchell v. Goldsmith*,
17 878 F.2nd 319 (9th Cir. 1989). Here, only Mr. Lopez stands out by being featured in front
18 of a bright blue background. In *Carter*, several of the subjects wore the same white
19 colored shirt as the defendant, and the backgrounds varied from dark grey (2 pictures)
20 to light grey (4 pictures). *United States v. Carter*, 410 F.3d 942, 948 - 949 (7th Cir.
21 2005). The difference here is that only Mr. Lopez is featured in a colorful red shirt,
22 against a bright blue background, in a different sized picture than all the rest. In
23 *Carbajal*, the fact that the defendant's face was bruised made it more difficult, not easier,
24 to identify him and all six photographs were similar to one another. *United States v.*
25 *Carbajal* 956 F.2d 924, 929 (9th Cir. 1992). In *United States v. Barrett*, 703 F.2d 1076,
26 1085 (9th Cir. 1983) and *United States v. Collins*, 559 F.2d 561, 563 (9th Cir. 1977) the

---

28 [4]The color photo array is Exhibit B of Mr. Lopez's motion, and is also attached to this Reply as Exhibit B.

Ninth Circuit reviewed the photo arrays and agreed with the district court that the arrays depicted photographs with either "barely noticeable" differences or "looked similar" to one another.

What is clear from the decisions cited by the government is that (1) allegations of an impermissibly suggestive photo array require the district court to exercise its sound discretion by examining the array to decided whether it impermissibly emphasizes the focus on the defendant; and (2) none of the cases cited share the uniquely flawed characteristics that render this array impermissibly suggestive.

IV.

*Witness Dylan Balderas Is A Felon Who Lied About His Gang Association, Is An Unreliable Witness, And His In-Court Identification Should Not Be Permitted.*

The array shown to Mr. Balderas is impermissibly suggestive on its face. *See* Exhibit B. Mr. Lopez seeks to exclude not only the unduly suggestive out-of-court identifications but the in-court identifications of witnesses Lemar Edwards, Arturo Larios and Dylan Balderas.

Lemar Edwards has signed a declaration that Detective Pellitier pressured him to identify Mr. Lopez. *See* Exhibit A. Mr. Edwards claims Pellitier showed him Mr. Lopez's picture and told him that Lopez was the shooter before showing him the photo array. Mr. Edwards denies ever telling Pellitier that he was "99% sure" Lopez was the shooter, and he testified at a state preliminary hearing that Lopez was in fact not the shooter, who Lopez identified as clean shaven, wearing a white tee-shirt. Motion at 5 - 6. Detective Pellitier also showed Mr. Balderas the same photo array as shown to Mr. Edwards.

Dylan Balderas is a felon who was arrested for vandalizing cars two days after the Guajardo killing. *See* Exhibit C, Balderas arrest report from 3/15/06. Balderas has repeatedly denied being a member or associate of the MS-13, or knowing any member of the MS-13. However, the arrest report lists Balderas as an active MS-13 gang member known as "Demon" who was with another MS-13 gang member when they both were

arrested for vandalizing cars on March 15, 2006. See Exhibit C, page 3. Balderas had been an MS-13 member for 2 months and was wearing a belt with MS-13 insignia on the buckle when he was arrested. *Id.*

Balderas was questioned by police after his arrest and he claimed to have information about the Guajardo killing. He claimed to have been on the street during the shooting and had briefly spoken to the shooter. The shooter, according to Balderas, had a full beard and was wearing a blue sweater. Motion, page 5. Mr. Balderas was not at the scene when the police arrived moments after the shooting, and Mr. Edwards insists that Balderas was not there during the shooting either. Shortly after testifying at Mr. Lopez's preliminary hearing, Balderas was deported to Mexico. He has since illegally re-entered the country and was arrested for assaulting his girlfriend. This is the "reliable witness" that the government has placed its full confidence in.

The government correctly points out that if the Court finds the identification procedure used was impermissibly suggestive, the in-court identification by the witness may still be allowed if the identification was otherwise reliable. GB, page 11. The *Biggers* factors are relevant when assessing reliability:

(1) Opportunity of the witness to view the defendant at the time of the crime;

(2) Witness's degree of attention;

(3) Accuracy of the witness's prior description;

(4) level of certainty demonstrated by the witness at the identification;

(5) length of time between the time and the identification.

*Neil v. Biggers*, 409 U.S. 188 (1972).

The government claims that Balderas recognized Mr. Lopez from prior contacts, which aided his ability to accurately identify him. But Balderas testified he only saw Mr. Lopez riding in a car once or twice "many months before." GB, Ex A. The government may think this is reliable evidence, but the Court may want to hear more from Mr. Balderas. How exactly does a person remember seeing someone else riding around in a car in a city of nearly 4 million people "many months" before seeing that person again

for a brief moment, and based on that memory accurately identify the person as one and the same? Balderas claims he never spoke to Lopez. He never met Lopez. He just saw him riding in a car once or twice in Los Angeles many months prior to the shooting.

Lemar Edwards was a friend of the victim and is not associated with the MS-13. He claims that Balderas is lying and that he was not on the sidewalk during the shooting. Edwards claims the shooter was wearing a white tee-shirt and was clean shaven; Balderas claims the shooter had a full beard and mustache and was wearing a blue sweater. Motion pages 5 - 6. The government may not be concerned with the fact that both of these witnesses cannot be right, but the Court may decide it should hear from both witnesses to help determine the credibility of each. The Guajardo murder is the only one charged against Mr. Lopez and there is no forensic evidence. The case rests entirely on the shoulders of Balderas since the government is not interested in calling Edwards.

Balderas claims he was paying close attention to the shooter, but why was he not there when the police responded just moments after the shooting, and why does Edwards insist Balderas was not there at all? How could he and Edwards offer such different descriptions of the shooter? These are legitimate questions of reliability that can only be answered after the Court has had an opportunity to hear from both witnesses. They simply cannot both be telling the truth.

As the government concedes, the third factor, the witness's prior description is not satisfied since there was no prior description. Balderas for reasons yet unexplained was not at the scene when the police responded to the shooting. The defense expects to show that Balderas' account of what occurred during and after the shooting is inconsistent with what the crime scene investigation proves happened.

V.

*Conclusion*

Mr. Lopez respectfully requests that the Court exclude the out-of-court and in-court identifications by witness Dylan Balderas, Arturo Larios and Lemar Edwards. For the reasons set forth, Mr. Lopez requests an evidentiary hearing which he anticipates will last 2 - 3 hours. The defense intends to call Arturo Larios, Lemar Edwards, Dylan Balderas and Dr. Shomer. The government has agreed to produce Mr. Balderas assuming the Court permits his testimony.

DATED: December 24, 2012          Respectfully submitted,

Mark F. Fleming

/s/  Mark Fleming
MARK F. FLEMING
Attorney for Defendant PEDRO LOPEZ

**CERTIFICATE OF SERVICE**

I, Mark F. Fleming

I, Mark F. Fleming hereby declare:

That I am employed in the County of San Diego, State of California; that my business address is 3150 Columbia Street, #600, San Diego, CA 92101; that I an over the age of 18 and not a party to the within entitled action; that I am a member of the bar of this Court.

On December 24, 2012, I served a copy of:

DEFENDANT PEDRO LOPEZ'S REPLY MOTION FOR SUPPRESSION OF IMPERMISSIBLY SUGGESTIVE IDENTIFICATION AND REQUEST FOR AN EVIDENTIARY HEARING

Service was by email as follows:

AUSA Garth Hire
garth.hire@usdoj.gov
AUSA Xochitl Arteaga
xochitl.arteaga@usdoj.gov
AUSA Robyn Bacon
robyn.bacon@usdoj.gov
DOJ Attorney Kevin Rosenberg
kevin.1.rosenberg@usdoj.gov

And all defense counsel.

This certification is executed on November 19, 2012 at San Diego, California. I certify under penalty of perjury that the foregoing is true.

*/s/ Mark F. Fleming*

Mark F. Fleming
Attorney