ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
GARTH HIRE (Cal. State Bar No. 187330)
JOANNA CURTIS (Cal. State Bar No. 203151)
ROBYN K. BACON (Cal. State Bar No. 251048)
Assistant United States Attorneys
Violent and Organized Crime Section
KEVIN L. ROSENBERG (Ohio State Bar No. 0081448)
Trial Attorney, U.S. Department of Justice
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0492/0298/4667
     Facsimile:  (213) 894-3713
     E-mail:   Garth.Hire@usdoj.gov
               Joanna.Curtis@usdoj.gov
               Robyn.Bacon@usdoj.gov
               Kevin.L.Rosenberg@usdoj.gov


Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 09-466-DSF-13 |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S ARGUMENT IN SUPPORT OF ITS OPPOSITION TO DEFENDANT PEDRO LOPEZ'S MOTION TO SUPPRESS PHOTOSPREAD IDENTIFICATION |
| v. | ) | |
| JOSE ALFARO, et al., | ) | |
| Defendants. | ) | |

1   Plaintiff United States of America, by and through its counsel

2   of record, the United States Attorney for the Central District of

3   California, hereby submits this argument in support of its

4   Opposition to Defendant Pedro Lopez's Motion to Suppress

5   Photospread Identification.

6

7

8   DATED: February 19, 2013          Respectfully submitted,

9                                     ANDRÉ BIROTTE JR.
                                      United States Attorney
10
                                      ROBERT E. DUGDALE
11                                    Assistant United States Attorney
                                      Chief, Criminal Division
12

13
                                         /s/Joanna M. Curtis
14                                    GARTH HIRE
                                      JOANNA M. CURTIS
15                                    ROBYN K. BACON
                                      Assistant United States Attorneys
16                                    Violent & Organized Crime Section

17                                    KEVIN L. ROSENBERG
                                      Trial Attorney, U.S. Department of
18                                    Justice

19                                    Attorneys for Plaintiff
                                      United States of America
20

21

22

23

24

25

26

27

28

2

# I.

## PROCEDURAL HISTORY

On November 19, 2012, Defendant Pedro Lopez, also known as "Grumpy" ("defendant"), filed a motion to suppress the photo identification made by Jose Pablo Balderas Flores, also known as Dylan Balderas (CR 1195).  On December 10, 2012, the government filed its opposition (CR 1235).  On December 24, 2012, defendant filed his reply and on January 7, 2013 (CR 1263), the government filed its sur-reply (CR 1275).

On January 16, 2013, the Court conducted a hearing on this matter.  The Court ruled that the photospread was impermissibly suggestive and permitted defendant to present testimony from Dylan Balderas, Lemar Edwards and Hilda Sanchez.  Because Hilda Sanchez failed to appear pursuant to a subpoena issued on behalf of defendant, the Court continued the hearing to January 28, 2013.

On January 28, 2013, the Court called the case; however, Ms. Sanchez was not present.  The Court indicated its willingness to issue a bench warrant for Ms. Sanchez and continued the hearing to January 31, 2013.  Some time later, the morning of January 28, 2013, Ms. Sanchez appeared and the Court ordered her to appear on January 31, 2013.  On that date, Ms. Sanchez appeared and testified for the defense.  At Defendant's request, the Court allowed submission of written arguments in support of each party's position.

# II.

## SUMMARY OF ARGUMENT

No matter how many witnesses defendant calls to the stand, it will not change the fact that Mr. Balderas witnessed defendant

shoot and kill another human being. Not only did Mr. Balderas accurately describe the shooting, he previously identified defendant three separate times over a period of nine months. Defendant's meager attempt to attack Mr. Balderas' credibility failed. Mr. Edwards' account of the shooting is consistent with that of Mr. Balderas. Ms. Sanchez's testimony should be rejected as wholly biased toward defendant and MS 13. The Court should deny defendant's motion and permit an in-court identification because Mr. Balderas' prior identification of defendant was reliable.

### III.

### **ARGUMENT**

A.   MR. BALDERAS' IDENTIFICATION OF DEFENDANT WAS RELIABLE AND AN IN-COURT IDENTIFICATION SHOULD BE ALLOWED.

On January 16, 2013, the Court ruled that the photospread from which Mr. Balderas identified defendant was suggestive. Therefore, the Court conducted an evidentiary hearing to determine whether Mr. Balderas' identification was "nonethless reliable." United States v. Givens, 767 F.2d 574, 581 (9th Cir. 19895)(citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977) and Neil v. Biggers, 409 U.S. 188, 198-200 (1972)). Based on the government's prior pleadings as to this issue, as well as Mr. Balderas' testimony, it is clear after applying the Biggers factors that the identification of defendant was reliable.

### 1.   **Mr. Balderas Had Sufficient Opportunity to View Defendant.**

Mr. Balderas had ample opportunity to view defendant such that he identified defendant three separate times in nine months. On January 16, 2013, Mr. Balderas recounted the details of the shooting in detail and did not waver in his answers. Specifically,

1   Mr. Balderas testified that the gray truck pulled alongside him and
2   that the passenger side was closest to him.   See Reporter's
3   Transcript of Proceedings for January 16, 2013 ("RTP"), CR 1315,
4   at 31: 13-17.  He testified that the passenger asked him where he
5   was from; he responded that he "didn't bang" and was "from Mexico;"
6   that the passenger said: "Grumpy Mara Salvatrucha;" and that he
7   overheard someone in the car say: "that's not him.  That's not
8   him."  Id. at 15: 13-20, 15: 21-24, 16: 12-13, 31: 18-25, and 32:
9   19-23.  Mr. Balderas testified that during this entire exchange,
10  he and the passenger were looking at each other.  Id. at 31: 18-25
11  and 32: 19-23.  This period of time, and the close proximity of
12  defendant to Mr. Balderas, have been found to be indicative of
13  reliability.  See Government's Opposition, CR 1235, at 11-12.
14  Thus, this factor strongly supports a finding of reliability.

15        **2.   Mr. Balderas had a High Degree of Attention.**

16       Mr. Balderas, an 18th Street gang member who found himself in
17  enemy-MS 13 territory, chose to say "I don't bang.  I'm from
18  Mexico" when defendant asked where he was from.  See RTP at 15: 13-
19  20.  He supplied this answer because he was afraid "somebody would
20  do something to me" if he answered truthfully.  Id. at 32: 4-15.
21  Mr. Balderas testified that after the gray truck approached the
22  victim and African-American man, he heard the victim say something
23  that ended in "street."  Id. at 17: 16-25; 18: 1; and 19: 21-25.
24  The victim was a member of the Diamond Street gang, another enemy
25  of MS 13.  Assuming, arguendo, that defendant, just like he asked
26  Mr. Balderas, asked the victim where he was from, the victim likely
27
28

                                   3

1    answered "Diamond Street."   Thus, Mr. Balderas' recollection of
2    what were likely the victim's last words makes sense.

3        Additionally, Mr. Balderas accurately described defendant's
4    physical attributes.     Specifically, Mr. Balderas described
5    defendant as a "Latin person" with "hair and a bit of a mustache."
6    He had a "close beard, a Van Dyke beard" "that were connected."
7    Id. at 7-12.   Every photograph of defendant in evidence is
8    consistent with Mr. Balderas' description and it is obvious that
9    defendant maintained facial hair in 2005 and 2006.  See defendant's
10   California Department of Motor Vehicles Soundex Photograph,
11   introduced into evidence as Government's "1" on January 31, 2013;
12   the group photo containing defendant and John Garcia, introduced
13   into evidence as Government's "2" on January 31, 2013; defendant's
14   March 22, 2006 booking photograph, introduced into evidence as
15   Government's "3" on January 31, 2013;  and the June 22, 2006 live
16   lineup photographs of defendant, introduced into evidence as
17   Government's "5" on January 31, 2013.   In each of these
18   photographs, Defendant has, at least, a "bit of a mustache" and a
19   "beard."   Thus, this factor strongly supports a finding of
20   reliability.

21       **3.    There was no Prior Description of Defendant.**

22       Although there was no prior description of defendant here by
23   Mr. Balderas prior to identification, this factor is by no means
24   dispositive.  See, e.g., United States v. Plunk, 153 F.3d 1011,
25   1021-22 (9th Cir. 1998) (affirming finding of reliability based on
26   district court's examination of the Biggers factors, "with the
27   exception of the third, which it found 'hard to apply' because
28   there was no 'prior description' in the record").

4

1    //

2    //

3        **4.   Mr. Balderas was Certain of His Identification.**

4        Mr. Balderas identified defendant from the photospread

5    containing six photogrpahs and indicated that he was 100% positive

6    of his identification.   See Government's Opposition, Pelletier

7    Declaration, Exhibit "B."   A finding that the photospread was

8    suggestive does not detract from Mr. Balderas' level of certainty.

9    Additionally, and despite defendant's altered appearance, on June

10   22, 2006, Mr. Balderas identified defendant at a live lineup.   See

11   Government's Exhibit "5," introduced on January 31, 2013 during the

12   evidentiary hearing.   Subsequently, on December 20, 2006, Mr.

13   Balderas identified defendant, in court, as the shooter during his

14   state preliminary hearing.   See Government's Opposition, CR 1235,

15   Exhibit A.

16       Another factor in this calculus is that Mr. Balderas' memory

17   of the shooting is abiding.   On January 16, 2013, Mr. Balderas

18   testified that the shooting affected his life; he has nightmares

19   about it; he remembers it clearly; and he still remembers what the

20   passenger (shooter) looks like.   See RTP at 33: 15-23.   Thus, this

21   factor strongly favors reliability.

22       **5.   Only Two Days Passed Between the Crime and the
         Identification.**

23

24       As previously set forth, the length of time between the murder

25   and Mr. Balderas' identification of Lopez was approximately two

     days (March 13, 2006 to March 15, 2006).   Two days is consistent
26
     with time periods found to support findings of reliability in other
27
     cases.   See Government's Opposition, CR 1235 at 13-14.
28

                                      5

Because nearly every one of the factors set forth in <u>Biggers</u> is satisfied here, the totality of circumstances confirm the reliability of Mr. Balderas' identification of defendant.

**B.   DEFENDANT'S WITNESSES CAST NO ASPERSION ON MR. BALDERAS' CREDIBILITY OR THE RELIABILITY OF HIS IDENTIFICATION.**

**1.   <u>Mr. Edwards' Testimony was Consistent with that of Mr. Balderas.</u>**

Defendant's decision to call Lemar Edwards remains puzzling and the purpose of his testimony remains unclear.  Setting aside Mr. Edwards' disoriented and uncomfortable demeanor, as well as his worthy attempts to provide favorable answers, Mr. Edwards' account of what happened on March 13, 2006 is consistent with that of Mr. Balderas.

Mr. Balderas and Mr. Edwards both described a terrifying, nighttime, drive-by shooting after which they both ran away.  They both described having nightmares about the shooting.  <u>See</u> RTP at 33: 19 and 49: 25.   The only salient difference between Mr. Balderas' and Mr. Edwards' accounts of the shooting is the description each gave of defendant's facial hair.  Mr. Balderas described defendant as having facial hair and Mr. Edwards described defendant as clean-shaven.  <u>See</u> RTP at 38: 19-25 and 39: 1-5. However, every piece of evidence before the Court, with the exception of Mr. Edwards' testimony, corroborates Mr. Balderas' recollection that defendant had facial hair in 2005 and 2006.

With respect to Mr. Edwards' live testimony, he seemed very uncertain about the events and had great difficulty recalling them. He had to be repeatedly prompted by defendant's counsel before he could provide even a rambling answer.  It is not surprising, then, that the declaration Mr. Edwards submitted on December 6, 2012 in

support of defendant's motion contradicts the live testimony he gave on January 16, 2013. See Defendant's Reply, Declaration of Lemar Edwards ("Edwards Decl."), CR 1263-1. In his declaration, Mr. Edwards stated that the vehicle from which the shots rang out was a SUV, or "sports utility vehicle." Id. at ¶¶ 3 and 4. On January 16, 2013, he testified that it was a gray van. See RTP at 37: 7-16. Though the distinction between a van and sports utility vehicle may not be great, it appears Mr. Edwards would rather contradict himself than corroborate Mr. Balderas.

In his declaration, Mr. Edwards stated that the victim asked for a cigarette. See Edwards Decl. at ¶4. On January 16, 2013, when asked whether the victim said anything, Mr. Edwards testified: "I don't-I don't-he was saying something. I don't know." Defendant's counsel tried to obtain a definitive statement from Mr. Edwards about whether the victim asked for a cigarette before being shot to death, and finally read Mr. Edwards' prior statement to him. See RTP 40: 4 through 42: 19. Mr. Edwards provided a rambling answer and it appeared as if he was desperately trying to recall the correct answer. Id. at 42: 16-19. Whether Mr. Edwards did not remember, made it up as he went along, or had difficulty sticking to his script, it certainly was not the picture of credible testimony.

In his declaration, Mr. Edwards unequivocally stated that Detective Pelletier showed him a photograph of defendant the day before he showed him the photospread. See Edwards Decl. ¶5. But, on January 16, 2013, despite defense counsel's best efforts, over several minutes, Mr. Edwards did not testify that this happened. See RTP at 48: 1 through 25.

1    Finally, in his declaration, Mr. Edwards stated that he was
2  pressured to make the identification. <u>See</u> Edwards Decl. ¶7.
3  However, on December 20, 2006, when his memory was arguably fresh,
4  Mr. Edwards testified at defendant's preliminary hearing four
5  separate times that he was not pressured to make the
6  identification. <u>See</u> Defendant's Motion, CR 1195-4, Preliminary
7  Hearing Transcript of Lemar Edwards, at 15: 16-20; 18: 14-16; 20:
8  6-10 and 20: 12-16.   On January 16, 2013, Mr. Edwards never
9  testified that Detective Pelletier pressured him.

10    But, to count Mr. Edwards among defendant's witnesses,
11  defendant must explain Mr. Edwards' March 16, 2006 identification
12  of him.  This is a difficult task, because in 2006, Mr. Edwards is
13  on record, under oath, that Detective Pelletier did not pressure
14  him to make the identification.   Over six years later, someone
15  prepared a declaration for Mr. Edwards that stated he was pressured
16  to make the identification.   Either Mr. Edwards was mistaken in
17  2006 when he responded to four separate inquiries in the negative
18  about whether he was pressured to make the identification, had an
19  epiphany about this alleged pressure six years later, forgot what
20  the author of his 2006 declaration included in it, just signed the
21  declaration without having it read to him, or he was never
22  pressured.   Presently, it is clear that Mr. Edwards wishes to
23  recant his prior identification.   Possible explanations are that he
24  fears MS 13; desires favorable treatment from MS 13, such as
25  dealing drugs in MS 13-controlled neighborhoods without taxation;
26  or previously agreed to recant in exchange for other benefits.
27  Unfortunately, in gang cases, witnesses regularly recant.

28

In the end, for purposes of determining whether Mr. Balderas' prior identification was reliable, it matters not whether Mr. Edwards' account differs slightly from that of Mr. Balderas. Any difference goes to weight, not admissibility. <u>See</u> <u>Perry v. New Hampshire</u>, 132 S.Ct. 716, 727-28 (2012) (recognizing that various factors can cast "doubt on the trustworthiness of an eyewitness' testimony," but explaining that consideration of those factors is within the province of the jury in deciding the weight, if any, to give to eyewitness evidence). Because Mr. Edwards' account of the shooting is consistent with that of Mr. Balderas, the Court should find that Mr. Edwards' testimony bolsters the finding of reliability.

**2.   <u>Ms. Sanchez is Biased Toward MS 13 and her Son and Her Testimony Should be Rejected.</u>**

At the evidentiary hearing to determine whether Mr. Balderas' prior identification of defendant was reliable, defendant called Ms. Sanchez to apparently attack Mr. Balderas' credibility. Defendant will likely argue that if the Court believed Ms. Sanchez when she testified that she never met, and does not know, Mr. Balderas, then his March 15, 2006 identification of defendant is unreliable. But, Ms. Sanchez's testimony has little to do with whether or not Mr. Balderas witnessed defendant shoot the victim. Indeed, it defies logic and common sense that Mr. Balderas, a sworn enemy of MS 13, would be walking around, by himself, in the heart of MS 13 territory, at night, unless he had a good reason to be on Kingsley, such as staying with Ms. Sanchez, a member of the only family he really knew in the United States. What is relevant, and

9

more problematic for defendant, is that Ms. Sanchez's testimony was completely biased toward defendant and MS 13.

Before discussing Ms. Sanchez's bias, it should be noted that Mr. Balderas and Ms. Sanchez were consistent on key points. They both testified that: John Garcia, a member of MS 13, is Ms. Sanchez's son; John Garcia was in juvenile hall; Ms. Sanchez's husband had a house painting business in 2005 and 2006; in 2006, Ms. Sanchez, her husband and son, John Garcia lived on Kingsley; and on March 13, 2006, John Garcia was not at Ms. Sanchez's home on Kingsley. See RTP at 25: 1-5, 28: 5-6, 28: 20-25, 30: 3-8, and 30: 20-25 and Reporter's Transcript of Proceedings for January 31, 2013 ("RTP2"), CR 1349,  at 13: 12-13; 7: 9-20; and 14: 2-4.   Mr. Balderas testified that he did not know why John Garcia was not home on March 13, 2006, and Ms. Sanchez confirmed her son was taken into custody and imprisoned for a crime he committed with defendant on March 1, 2006, thus explaining her son's absence. See RTP at 30: 20-25 and RTP2 at 10: 3-13.  However, Ms. Sanchez and Mr. Balderas parted ways when Ms. Sanchez maintained she did not know Mr. Balderas and he never stayed at her house.   In order to resolve this discrepancy, one must choose to believe, as Ms. Sanchez testified, that it is a mystery how Mr. Balderas knew so much about her family, or that he was telling the truth.  Id. at 16: 3.

Ms. Sanchez's bias and potential motivation to lie about such a question is apparent from her circumstances.  If Mr. Balderas is telling the truth, then a fellow MS-13 and Hollywood Locos Clique member's mother allowed an enemy gang member into her home who just happened to be on her street, Kingsley, when defendant shot and killed the victim.    Even worse,   in   light   of   Mr.   Edwards'

10

recantation of his prior identification of defendant, the witness Ms. Sanchez allowed into her home is the only remaining eye-witness to the murder.  If not for the generosity of Ms. Sanchez, then Mr. Balderas never would have been on that street and in a position to witness the murder.  Given these circumstances, it was likely easier, and safer, for Ms. Sanchez to testify that she never harbored the witness to a murder committed by a member of her son's gang, who controls the area in which she presently lives.

     To the point, Ms. Sanchez revealed her true bias toward protecting defendant and MS-13 when she was specifically asked about defendant.  Ms. Sanchez was asked whether her son, John Garcia, committed his crime on March 1, 2006 with "...the defendant, who is here in court, the gentleman over here in the white, sitting between the two men in the suits, named Pedro Lopez. He went by Grumpy."  See RTP2 at 17-19.  She replied: "Well, the investigator that came to see me at my house said I was going to be asked some questions only, not this [sic] kind of questions."  Id. at 22-24.  After the Court instructed Ms. Sanchez to answer, she reluctantly admitted that her son committed the crime with defendant, whom she later claimed she did not know.  Id. at 10: 3-6 and 11: 16-19.  However, Ms. Sanchez's denial that she knew defendant rang hollow when the Court inquired whether she knew any members of the audience.  Ms. Sanchez testified that she knows "Pedro's mother."  Id. at 16: 14-18.  This answer suggests that she knows, and is familiar with, defendant.

     Another moment of bias shined through when Ms. Sanchez was asked whether she remembered the murder which took place across the street from her house on March 13, 2006.  Ms. Sanchez replied:  "I

don't know anything about what happened then." <u>Id</u>. at 16: 7-9.

When told the question was not what happened during the murder, the

question was whether she remembered that the murder occurred at

all, she, incredibly, testified that she did not remember. <u>Id</u>. at

10-12. The event that brings nightmares to Mr. Balderas and Mr.

Edwards apparently slipped her mind.  Given Ms. Sanchez's clear

bias toward defendant, her testimony should be rejected.

**IV.**

**CONCLUSION**

For the foregoing reasons, defendant's motion to suppress

identification evidence should be denied and Mr. Balderas should be

permitted to make an in-court identification at trial.


DATED:  February 19, 2013          Respectfully submitted,
                                   ANDRÉ BIROTTE JR.
                                   United States Attorney

                                    _/s/Joanna M. Curtis_
                                   GARTH HIRE
                                   JOANNA M. CURTIS
                                   ROBYN K. BACON
                                   Assistant United States Attorneys

                                   KEVIN L. ROSENBERG
                                   Trial Attorney, U.S. Department of
                                   Justice

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA