Mark F. Fleming
Law Office of Mark F. Fleming
California Bar #165770
1350 Columbia Street, #600
San Diego, CA 92101
(619) 300-6202
mfflaw@cox.net

Attorney for Defendant PEDRO LOPEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. CR-09-00466-DSF-13 |
|---|---|---|
| Plaintiff, | ) ) ) | **DEFENDANT PEDRO LOPEZ'S SUPPLEMENTAL BRIEF TO HIS MOTION TO SUPPRESS IN COURT IDENTIFICATION BY WITNESS DYLAN BALDERAS** |
| v. | ) ) ) | |
| PEDRO LOPEZ, | ) ) | |
| Defendant. | ) ) ) ) ) | Hearing Date: To be set by Court<br>Time:<br>Courtroom: Hon. Dale S. Fischer |

TO: UNITED STATES ATTORNEY ANDRE BIROTTÉ JR. AND ASSISTANT UNITED STATES ATTORNEYS GARTH HIRE, JOANNE CURTIS, ROBYN BACON and KEVIN ROSENBERG:

PLEASE TAKE NOTICE that defendant Pedro Lopez, by and through his counsel, Mark Fleming, hereby files this supplemental brief in support of his request to suppress the in-court identification of Pedro Lopez by witness Dylan Balderas based upon the impermissible suggestive nature of the identification procedures used by law enforcement and Mr. Balderas' inability to make a reliably independent identification untainted by the flawed array he was shown.

DATED: February 19, 2013                                       Respectfully submitted,

                                                               */s/ Mark F. Fleming*
                                                               Mark F. Fleming
                                                               Attorney for Pedro Lopez

1

I.

*Summary of Impermissibly Suggestive Identification Motion*

Pedro Lopez filed a motion to suppress out-of-court and in-court identifications by witnesses Lemar Edwards, Dylan Balderas, Arturo Larios and S.S. based upon impermissibly suggestive identification procedures utilized by law enforcement as to each witness. *See* Doc. 1195, filed 11/19/12. In its opposition brief, the government revealed that it did not intend to call in its case-in-chief witnesses Edwards, Larios or S.S.. *See* Doc. 1235 (Gov Opp), filed 12/10/12. It argued that this fact rendered Mr. Lopez's motion moot as it pertained to these three witnesses, and addressed only the identification by Dylan Balderas.[1] *Id*. at 2.

As to the identification made by Dylan Balderas, the government insisted that: 1) Mr. Balderas' identification of Mr. Lopez was not the product of impermissibly suggestive procedures; 2) Mr. Lopez's request to preclude Mr. Balderas' in-court identification of Mr. Lopez should be denied *because Mr. Balderas knew and recognized Lopez from prior contacts;* had ample opportunity to view Lopez; was 100% certain at the time he made his identification, which occurred two days after the shooting; and Mr. Balderas identified Mr. Lopez as the shooter at a state preliminary hearing. *Id*. (Emphasis added).

An evidentiary hearing was held on January 16 and 31, 2013. Prior to hearing testimony, this Court ruled that the photo array shown to Mr. Balderas was indeed impermissibly suggestive since the array impermissibly emphasized the focus on Mr. Lopez. The Court then heard testimony from Dylan Balderas and Lemar Edwards on January 16 and from Hilda Sanchez on January 31. The government called no witnesses

---

[1] The government advised that the charges relating to witness S.S.'s identification of Mr. Lopez will be dropped from the indictment and S.S. will not be called as a witness. Mr. Lopez, in light of this disclosure, agrees that his motion as it pertains to witness S.S. is moot. This Court agreed with the government that the issue of the identifications made by witnesses Edwards and Larios is moot, but that Mr. Lopez may renew his objection to their identifications prior to the government's cross-examination, should Mr. Lopez decide to call the witnesses during trial. Given this, Mr. Lopez's supplemental brief addresses only the issue of Dylan Balderas' identification.

and did not ask witness Lemar Edwards a single question.

The practical effect of the Court's ruling on the photo array is that the government may not elicit testimony from Dylan Balderas, Lemar Edwards or Arturo Larios that the witness identified Mr. Lopez from the flawed array. The question that remains to be decided by the Court is whether Dylan Balderas is permitted to make an in-court identification of Mr. Lopez. The answer to that question turns on whether the government is able to prove that despite the impermissibly suggestive photo array shown to Mr. Balderas, his identification of Mr. Lopez is sufficiently reliable to overcome the corrupting tendencies of the suggestive pretrial identification procedure. *United States v. Field*, 625 F.2d 862 (9th Cir. 1980).

## II.

*Dylan Balderas' Identification of Mr. Lopez Lacks Sufficient Reliability to Overcome The Indicia Of Improper Influence Resulting From His Viewing of The Impermissibly Suggestive Photo Array*

The Ninth Circuit requires that this Court consider, as part of its reliability finding of Mr. Balderas, the five factors set forth by the Supreme Court in *Biggers* in order to overcome the corrupting tendencies of being subjected to the impermissibly suggestive identification procedure used here. *United States v. Fields*, 625 F.2nd 862, 866 (9th Cir. 1980) citing *Neil v. Biggers,* 409 U.S. 188 (1972); *See also Manson v. Brathwaite*. 432 U.S. 98, 114 (1977)(reliability is the linchpin in determining the admissibility of identification testimony...the factors to be weighed against the corrupting effect of a suggestive identification procedure in assessing reliability are those set out in *Neil v. Biggers*.)  Unless the Court is satisfied that Mr. Balderas' identification is sufficiently reliable despite being shown the flawed array, he may not make an in-court identification of Mr. Lopez.[2]  The *Biggers* factors are: (1) the witness' opportunity to view the criminal

---

[2] The government argued at the hearing on January 16 that the issue of Mr. Balderas' reliability ought to be left for the jury to decide. Supreme Court and Ninth Circuit case law say otherwise. This Court is charged with the task of determining reliability where, as here, the witness has been subjected to an impermissibly suggestive photo array. Should the Court determine that Mr. Balderas lacks sufficient reliability to make an in-court identification, that finding does not prohibit Mr. Balderas from testifying about the

at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation. Mr. Balderas' abysmally poor performance while testifying at the hearing, testimony which was directly contradicted by that of witnesses Lemar Edwards and Hilda Sanchez, fell short of what is required to overcome the government's burden of proving he can offer a reliable in-court identification, despite having been shown an impermissibly suggestive photo array.

      a.    *Balderas Testified He Never Saw Mr. Lopez Prior to March 13, 2006*

In its opposition brief, the government argued that Mr. Balderas' ability to identify Mr. Lopez is bolstered by the fact that Balderas recognized Mr. Lopez from prior contacts. *See* Gov Opp at 11 and 15.  This fact, according to the government, tips the *Biggers* analysis in favor of reliability as to factor (1), the opportunity to view the criminal at the time of the offense; and also as to factor (3), the accuracy of prior description of the criminal. *Id.* at 13. The government no doubt expected Balderas to repeat what he had told agents back in March of 2006 and what he testified to in December of 2006: that he recognized Mr. Lopez from prior contacts in 2005, when he saw Mr. Lopez driving in a car on several occasions buying food in LA. And that he saw Mr. Lopez the day after the shooting, buying food at the swap meet. But that was not the testimony he gave on January 16.

Instead, Balderas testified he *never saw the passenger* before or since seeing him on March 13, 2006.[3] Ex A, EHT 15, 36:

    Q: You have never – you had never seen this person before in your life before events of March 13, 2006.  He simply cannot point out Mr. Lopez as the shooter.

---

[3] Mr. Balderas' and Mr. Edwards evidentiary hearing transcript from January 16 (EHT) is attached as Exhibit A and will be cited as Ex A, EHT followed by the page number.

March the 13th of 2006?

A: I don't remember. I don't remember having done it. I had only seen him that time with the shooting.

Balderas also admitted that the day prior to testifying on January 16, he told the government that he had never seen the passenger before March 13, 2006. Ex A, EHT 12.

Whether Balderas honestly cannot remember whether he saw the passenger before or after March 13, 2006, or whether he is lying, makes little difference in terms of assessing his reliability. The testimony before the Court is that Balderas never saw the passenger before, and as the government argued in its brief, that fact is relevant in determining reliability under *Biggers*. Except that instead of establishing reliability, as the government had hoped it would, the testimony is evidence that Mr. Balderas' identification is unreliable.

    b.    <u>*Balderas' Description of The Shooter And His Account Of The Shooting Is Impeached By The Testimony of Witnesses Lemar Edwards and Hilda Sanchez*</u>.

The *Biggers* factors require the Court to focus on the witness' degree of attention at the time of the offense and the accuracy of the witness' (prior) description of the criminal. There is no reasonable dispute in light of his testimony that Mr. Balderas is unable to provide an accurate *prior* description of the shooter. But Balderas has shown that he cannot even provide an accurate description of the shooter *at the time of the shooting* or that he has even a rudimentary understanding of what occurred prior to, during or after the shooting. His deficiencies in this area seriously undermine his ability to provide a reliable identification of Mr. Lopez.

Balderas admits he was released from custody on March 12, 2006, the day prior to the shooting. Ex A, EHT 5. While walking across the street from his home at 1194 Kingsley, he claims to have seen a black man and a Latino man standing on the street. Ex A, EHT 10. Although Balderas claims to have never seen the black man before (Ex

5

1 A, EHT 10), he has previously testified and told agents that he recognized the black man
2 as a drug dealer on Kingsley. He claims that a truck pulled up in front of him and the
3 passenger asked Balderas "where you from" and after explaining to the passenger that
4 "he didn't bang" the passenger said "Grumpy Mara Salvatruchia" before driving up the
5 road and stopping next to the black man and Latino man. Ex A, EHT 15 - 16. Balderas
6 described the passenger as a Latin person with a mustache and beard that were
7 connected. Ex A, EHT 34. He also claims someone from the truck said "Mara
8 Salvatruchia" before shooting the victim. Ex A, EHT 20. The victim and the black man
9 ran up and down the street after shots were fired, and at one point after the shooting the
10 black man ran directly at Balderas. Ex A, EHT 21 - 22. Balderas was not at the scene
11 moments later when police arrived, and did not provide information until two days later,
12 after he was again arrested, this time for vandalizing a car with a known MS-13 gang
13 member.

14     Witness Lemar Edwards testified that he was standing on Kingsley at the foot of
15 his driveway the night of March 13, 2006 talking with his friend and roommate, Danny
16 Boy (victim Guajardo). Ex A, EHT 37. A vehicle pulled up and parked next to him. Ex
17 A, EHT 37. Mr. Edwards looked the passenger dead in the face from a distance of only
18 4 - 5 feet with nothing obstructing his view. Ex A, EHT 38. Mr. Edwards testified, as he
19 has previously, that the passenger had no facial hair at all and was dressed in a white tee-
20 shirt. Ex A, EHT 38 - 39. He testified the occupants of the vehicle said nothing at all
21 before or after the passenger shot his friend, Danny Boy. Ex A, EHT 44. Edwards
22 testified that no one else was standing on Kingsley when the vehicle pulled up to him,
23 and that the vehicle never stopped to speak to anyone else before pulling up to his
24 location. Ex A, EHT 37. After Danny Boy was shot, Edwards testified they ran in a
25 straight line directly from the foot of the driveway, back down the driveway until they
26 reached the porch of Edward's home, where Danny Boy collapsed, hummed a tune, and
27
28

died. Ex A, EHT 45 - 46.

Mr. Edwards was at the scene with his friend Danny Boy when the police arrived. Ex A, EHT 47. He cooperated fully with the police that night, provided a complete statement the following day to investigators, and testified at a preliminary hearing in 2006 consistent with his testimony here. During his 2006 testimony, after being asked to look at Mr. Lopez, he said that Pedro Lopez was not the shooter.

Hilda Sanchez testified on January 31.[4] She explained that she was living at 1194 Kingsley Drive in Los Angeles in March of 2006. Ex B, EHT 6. Ms. Sanchez identified the same photograph that Balderas identified as 1194 Kingsley Drive. *Id*. In March of 2006, Ms. Sanchez lived at this address with her husband. *Id*. She did not recall if her son John was in jail at that time (he was). When shown a photograph of Dylan Balderas, Ms. Sanchez stated she does not know him, and has never met him or had a conversation with him. *Id*. 7. Ms. Sanchez testified that Dylan Balderas did not stay in her home on Kingsley in March of 2006. *Id*. On cross-examination, Ms. Sanchez repeated that she never allows anyone to stay at her home, including Dylan Balderas. *Id*. 14. She also testified that she does not feel that she must do what the MS-13 ask her to do, and in fact that no one from the defense team even told her why she needed to come to court to testify.[5] *Id*.

Dylan Balderas' testimony that he lived at 1194 Kingsley Drive in March of 2006 with the permission of John "Pelon" Garcia's mother (Hilda Sanchez) is at odds with that of Ms. Sanchez. So is his testimony that he spoke with Ms. Sanchez the night of the shooting.

---

[4]Ms. Sanchez's evidentiary hearing transcript from January 31 (EHT) is attached as Exhibit B and will be cited as Ex B, EHT followed by the page number.

[5]Undersigned counsel can attest that this is true. The defense intentionally avoided any mention of an MS-13 connection while speaking with Ms. Sanchez to prevent an allegation by government counsel that Ms. Sanchez was somehow coerced to testify favorably to Mr. Lopez.

Either Mr. Balderas is lying or *both* Mr. Edwards and Hilda Sanchez are lying. Undersigned counsel has made no secret of the fact that the defense believes Mr. Balderas is lying about what he saw the night of the shooting. The reasons for his lies are unclear. Balderas is a convicted felon who associates with the MS-13, despite claiming otherwise. Balderas admitted that in March of 2006 he was under the influence of marijuana, alcohol, and crystal (meth).  He makes no statement about being present on Kingsley until he is arrested two days later on an unrelated charge. For purposes of this motion, it may be helpful for the Court to compare the testimony of the witnesses in order to assess Mr. Balderas' credibility on the issue of whether he can truly make a reliable  identification of Mr. Lopez.  If the Court concludes that Mr. Balderas is being less than candid in critical areas of his testimony, then he presumably cannot satisfy the rigorous test set forth in *Biggers* and should not be permitted to make an in-court identification.

### III.

### *Conclusion*

An examination of the totality of surrounding circumstances, as is required here to determine reliability, leads inevitably to the conclusion that the government has failed to carry its burden under *Biggers*. See generally *Fields*, 625 F.2d 862 (9th Cir. 1980). Dylan Balderas has proven himself to be an unreliable, drug-addled felon who cannot keep his story straight. His wildly differing accounts of what he claims he witnessed on March 13, 2006, the core facts of which are contrary to two witnesses who do not suffer from the same shortcomings as Balderas, render his in-court identification unreliable in light of his being exposed to an impermissibly suggestive photo array.  While the defense concedes that Mr. Balderas is free to testify about his claims as to what he witnessed the

1 | night of the shooting, he should not be permitted to make an in-court identification of
2 | Mr. Lopez during that testimony.

          Respectfully submitted,

          *e-signed by Mark Fleming*
          Attorney for Pedro Lopez

# CERTIFICATE OF SERVICE

I, Mark F. Fleming hereby declare:

That I am employed in the County of San Diego, State of California; that my business address is 3150 Columbia Street, #600, San Diego, CA 92101; that I an over the age of 18 and not a party to the within entitled action; that I am a member of the bar of this Court.

On February 19, 2013, I served a copy of:

DEFENDANT PEDRO LOPEZ'S SUPPLEMENTAL BRIEF ON THE PENDING MOTION TO SUPPRESS SUGGESTIVE IDENTIFICATION

Service was by email as follows:

AUSA Garth Hire
garth.hire@usdoj.gov
AUSA Xochitl Arteaga
xochitl.arteaga@usdoj.gov
AUSA Robyn Bacon
robyn.bacon@usdoj.gov
DOJ Attorney Kevin Rosenberg
kevin.1.rosenberg@usdoj.gov

And all defense counsel.

This certification is executed on February 19, 2013 at San Diego, California. I certify under penalty of perjury that the foregoing is true.

*/s/ Mark F. Fleming*

Mark F. Fleming
Attorney